**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN STRACZYNSKI, on behalf of herself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONTEXTLOGIC, INC., doing business as Wish.com,<br><br>Defendant. | Case No.: **'18CV0855 L   NLS**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *et seq.*** <br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Evelyn Straczynski ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of ContextLogic, Inc. doing business as Wish.com ("Defendant" or "Wish.com"), in negligently and/or willfully contacting Plaintiff through text message calls on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § § 227 *et seq*. ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. In a misguided effort to solicit business, Wish.com routinely contacts potential customers through text messages with automatic telephone dialing equipment. However, Wish.com regularly sends these text messages to cellular telephone numbers, without consent, in violation of the TCPA.

2. The TCPA strictly forbids nuisance text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phones, placed to numbers obtained without the prior express consent of the recipients.

3. Defendant's violations caused Plaintiff and members of the Class actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited text messages, as well as the violation of their statutory rights.

4. Plaintiff and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Defendant's conduct, and is likely to be redressed by a favorable decision in this action.

5. Plaintiff seeks an injunction stopping Defendant from sending unsolicited text messages, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.,* a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012). Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each text messages in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of the Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

7. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant transacts significant amounts of business within this District.

8. Personal jurisdiction over Defendant is also proper in this District because Defendant, at all times herein mentioned, was doing business in the County of San Diego, State of California, and a substantial part of the events giving rise to the claim, mainly Plaintiff's receipt of the offending text messages, occurred in this jurisdiction.

## PARTIES

9. Plaintiff is, and at all times mentioned was, a resident of the State of California, County of San Diego. She is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

10. Defendant is an internet marketing company incorporated in Delaware that maintains its principal place of business at One Sansome Street, 40th Floor, San

Francisco, California 94104.  Defendant is a "person" as defined by 47 U.S.C. § 153 (39).  Defendant operates several websites including Wish.com.

11. Plaintiff alleges that at all times relevant herein Defendant conducted business in the state of California and in the County of San Diego, and within this judicial district.

## THE TELEPHONE CONSUMERS PROTECTION ACT OF 1991 ("TCPA") 47 U.S.C. §§ 227 *et seq.*

12. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

13. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]  As recognized by the Federal Communications Commission ("FCC") and the Court, a text message is a call under the TCPA.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

3

The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

15. One of the most bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for transmission and receipt of short text messages to and from wireless telephones.

16. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text message are received virtually anywhere in the world.

17. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

18. Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power which shortens the battery life; and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message.

---

[3] *In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014 (FCC July 3, 2003).

19. As of October 16, 2013, express written consent is required to make any such telemarketing calls or text messages to the telephone of consumers. The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure of the significance of providing consent and must further unambiguously agree to receive future phone calls. [4]

20. On July 10, 2015 the FCC released a Declaratory Ruling wherein it was confirmed that even if a consumer originally did provide "prior express consent" that caller has a right to revoke consent, using any reasonable method, including orally or in writing.[5] However, even before the FCC Order that consent to receive a text message could be revoked, the Mobile Marketing Association declared in October 2012 in its *U.S. Consumer Best Practices for Messaging* that "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program…" and "… if the subscriber sent STOP or STOP ALL to the short code, they are opted out of all programs they were enrolled in on that short code."

21. The TCPA and its implementing rules make it unlawful for a person to "make" or "initiate" a call that violates the Act. 47 U.S.C. § 227(b)(1)(A).

## FACTUAL ALLEGATIONS

22. In an effort to gain business, generate revenue and promote product sales, Defendant runs marketing campaigns by way of mass text message campaigns. Defendant ran these marketing campaigns without the prior express written consent of the text recipients as required by law. Further, Defendant continued to text

---

[4] *In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (FCC Feb. 15, 2012); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009); *Gutierrez v. Barclays Grp.*, 2011 WL 579238, at *2 (S.D. Cal. Feb. 9, 2011).

[5] *In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 30 F.C.C Rcd. 7996, 2015 WL 4387780 (FCC July 10, 2015); *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018).

message those prospective customers even after he or she revoked consent from future contact.

23. Beginning no later than February of 2018, Plaintiff began receiving unsolicited text messages on her cellular telephone from Defendant.

24. On February 5, 2018 at 10:13 a.m., Plaintiff received an unsolicited text message from the number 18443034989 which stated: "This Valentine's Date grab something special for your love one. www.wish.com/x/d6e46a2"

25. On February 14, 2018 at 7:23 p.m., Plaintiff received an unsolicited text message from the short code 89293 which stated: "This Valentine's Day, look hot w/new beauty, perfume & lingerie. www.wish.com/x/70deb3a"

26. On March 2, 2017 at 11:17 a.m., Plaintiff received an unsolicited text message from the short code 89293 which stated: "Try something new. See the top fashion trends for 2018! www.wish.com/x/7c11673"

27. On March 9, 2018 at 2:55 p.m., Plaintiff received an unsolicited text message from the short code 89293 which stated: "Don't get pinched. St. Patrick's day is just 2 weeks away. www.wish.com/x/18d4c42"

28. On March 17, 2018 at 7:49 p.m., Plaintiff received an unsolicited text message from the short code 89293 which stated: "Time to fill up your baskets. Easter is just around the corner. www.wish.com/x/ffe9d60"

29. On March 23, 2018 at 4:49 p.m., Plaintiff received an unsolicited text message from the short code 89293 which stated: "All the travel gear you need for spring break, inside. www.wish.com/x/50a17d2"

30. On April 7, 2018 at 10:58 a.m., Plaintiff received an unsolicited text message from the short code 89293 which stated: "Major League Baseball season is here. Get your gear. www.wish.com/x/a2cb6801"

31. The source of each of the SMS text messages sent by Defendant was 18443034989 or 89293. Both numbers belong to Defendant. The 89293 number is

an SMS short code leased by Defendant and used for operating Defendant's text message marketing program.

32. Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she received an SMS text message, each unsolicited SMS text message that Defendant sent invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion.

33. Plaintiff also became distracted and aggravated as a result of receiving each of Defendant's SMS text messages.

34. Plaintiff is not alone in receiving these unsolicited text message advertisements. In fact, numerous consumers have complained of receipt of similar unsolicited text messages, stating they never provided their cellphone numbers to the Defendant, or provided any permission, let alone prior express written consent, to the Defendant to receives the offending text messages, and yet continued to receive the text messages:

   a. On March 23, 2018, Rhiannon wrote "I keep getting spam from Wish. I use Wish, but I've never given them my number, and nothing on their app shows them having my number."
   b. On March 9, 2018, Sierra wrote "wish.com keeps sending me messages about deals and how my order has been delivered. I made an account but NEVER ordered from them not have I ever given them my number. It's getting ridiculously annoying."

*See* http://shortcodes.org/uncategorized/89293-short-code/ (last visited on Mary 2, 2018).

35. These unsolicited text messages placed to Plaintiff's wireless telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and as prohibited by 47 U.S.C. § 227(b)(1)(A), which has the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiff's cellular telephone and/or by using

"an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227(b)(1)(A).

36. The TCPA was intended to give individuals control over how and where they receive calls. When Defendant places the phone text messages to consumers without their consent, it fails to address or respect the limitations imposed by the TCPA. In doing so, it takes control away from the consumers and violates both the spirit and the letter of the TCPA.

37. These text messages constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

38. Plaintiff never provided Defendant or its agents wither prior express written consent as required under TCPA regulations to receive automated text message advertisements pursuant to 47 U.S.C. § 227 (b)(1)(A) and/or had revoked any alleged prior express consent.

39. In addition to being a nuisance and an invasion of privacy, Defendant's unauthorized automated text messages consistently interfered with Plaintiff's, and other Class member's use of their cellular telephones.

40. These text messages by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

41. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

**CLASS ACTION ALLEGATIONS**

42. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and on behalf of and all others similarly situated ("the Class").

43. Plaintiff represents, and is a member of the Class, consisting of all persons in the United States and its Territories who were sent one or more text message advertisements by Defendant of its agents on their cellular telephones,

through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3), without providing prior express written consent to receive such messages, within four years prior to the filing of Complaint through the date of final approval.

44. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

45. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using unsolicited text messages, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were thereby damaged through Defendant's unlawful actions.

46. This suit seeks only statutory damages and injunctive relief on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

47. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or Defendant's agents' records.

48. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and

fact to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether, within the four years prior to the filing of this Complaint through the date of final approval, Defendant or its agents sent text message advertisements without the recipients' prior express written consent (other than a telephone call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or prerecorded voice system, to any telephone number assigned to a cellular telephone service;

    b. Whether the equipment Defendant, or its agents, used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

    c. Whether Defendant, or its agents, systematically made text messages to persons who did not previously provide Defendant with their prior express written consent to receive such text messages;

    d. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

    e. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

49. As a person that received at least one unsolicited text message advertisement to her cell phone without Plaintiff's prior express written consent, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

50. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition,

these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

51. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

52. A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured by prosecuting Plaintiff's claims as a class action.

53. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT 1

### NEGLIGENT VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227 *ET SEQ.*

54. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

55. Defendant made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiff and other members of the Class without the prior express written consent.

56. These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of Plaintiff.

57. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

58. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

59. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

# COUNT 2

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227 *ET SEQ.*

60. Plaintiff incorporates by reference paragraphs 1-53 of this Complaint as though fully stated herein.

61. Defendant made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiff and other members of the Class without the prior express written consent.

62. These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of Plaintiff.

63. The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

64. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

65. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

# PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendant:

### FIRST COUNT FOR NEGLIGENT VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

66. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

67. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### SECOND COUNT FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

68. As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

69. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

* * *

70. An order certifying the Class as defined above, appointing Plaintiff Straczynski as a Class Representative, and appointing the Law Offices of Ronald A. Marron as Class Counsel.

71. An award of reasonable attorneys' fees (in the event of a class recovery) and costs.

72. Any other relief the Court may deem reasonable, just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

\* \* \*

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, emails, documents and all other tangible things that relate to the allegations herein, Plaintiff or the putative class members, or the sending of text messages, the events described herein, any third party associated with any telephone call, campaign, account or file associated with Plaintiff. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials, and notify the undersigned of the circumstances immediately so that counsel may take appropriate action. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

Dated:  May 3, 2018

*s/ Ronald A. Marron*
By: Ronald A. Marron
ron@consumersadvocates.com
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
ALEXIS M. WOOD
KAS L. GALLUCCI
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff
and the Proposed Class*